Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James H. Alesia | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 0542 | **DATE** | FEB 12 2001 |
| **CASE TITLE** | *Perfecto Castellano vs. Chicago, P.D., et al.* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The court grants in part and denies in part defendants' motion to dismiss [39-1]. Any claims against the county defendants in their official capacity are dismissed; all other claims in plaintiff's complaint remain.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| ✓ | Notified counsel by telephone. | FEB 12 2001 date docketed | |
| ✓ | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| CW | courtroom deputy's initials | FEB 12 10:30 date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PERFECTO CASTELLANO,<br><br>        Plaintiff,<br><br>v.<br><br>CHICAGO P.D., *et al.*,<br><br>        Defendants. | Case No: 00 C 0542<br><br>Judge James H. Alesia |

DOCKETED FEB 1 2 2001

## MEMORANDUM OPINION AND ORDER

Before the court is defendants' motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), plaintiff's third amended complaint. For the following reasons, the court grants in part and denies in part defendants' motion to dismiss.

### I. BACKGROUND

Plaintiff Perfecto Castellano ("Castellano") brings this action against various individual police officers and prison officials for violations of 42 U.S.C. § 1983. The individual city police officers have answered plaintiff's third amended complaint and have not, therefore, joined in for purposes of this motion to dismiss. However, the individual county defendants – correctional officers employed by Cook County (collectively "county defendants") – Pan, Hickerson, Daly, Farris, Cruz, Barron, Walsh, Kelly, Haynes, Hodges, Dyer, Clark, Pollard, Powell, Purell-Tillery, Imhof, Blanks, Buchanan, Stanley, Houk, Parker, and Kemp – have filed this current motion to dismiss plaintiff's third amended complaint.

48

The third amended complaint alleges the following facts which, for purposes of ruling on this motion, are taken as true. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). On July 12, 1997, plaintiff was shot in the leg, shattering the bones in his lower, right leg. While plaintiff was to undergo massive reconstructive surgery, because of swelling around the wound and other medical conditions the surgery was delayed. As a result of the gun shot injury, plaintiff was unable to walk without crutches or a cane.

On June 13, 1998, plaintiff was arrested by Chicago police officers for delivery of a controlled substance. During the arrest, the police officers threw plaintiff to the ground, handcuffed him, shackled his ankles and put him in the squad car. Plaintiff asked that the police officers retrieve his crutches -- which were left lying on the ground near where he was apprehended -- but the officers refused. Plaintiff remained sitting in the squad car for almost four hours after which time he was taken to the police station.

At the police station, plaintiff asked several police officers for crutches and for medical assistance due to the pain in his lower right leg. Those requests were denied. Then, on June 14, 1998, plaintiff was transferred to Cook County Department of Corrections ("CCDOC"). During the initial processing, plaintiff -- without the assistance of crutches or a cane -- had to stand on his feet for several hours and walk and/or hop a significant distance, causing tremendous pain in his leg. After many hours, plaintiff was given a new set of crutches.

Following the initial processing, plaintiff was sent to the CCDOC's healthcare unit to receive medical attention, presumably for his leg, during his incarceration. However, upon arriving at the healthcare unit, several of the individual county defendants – Pan, Houk, Daly,

Hickerson, Farris, Cruz, Barron, Walsh, Kelly, Haynes, and/or Hodges (collectively "healthcare officers") – told plaintiff that he did not belong in that unit and, consequently, had plaintiff reassigned to a non-healthcare unit. The healthcare officers provided no justification for the transfer.

On June 18, 1998, plaintiff was sent to the segregation unit at the CCDOC for a "questionable trinket" on his shoelace. While in the segregation unit, plaintiff complained repeatedly about the extreme pain in his leg and asked for medical attention. Individual county defendants Stanley, Kemp, Parker, Dyer, Clark, Davis, Pollard, Buchanan, Powell, Purell-Tillery, Imhof and/or Blanks (collectively "segregation officers") completely ignored and/or mocked plaintiff's requests for medical attention. Then, on June 26, 1998, plaintiff was transferred from the segregation unit back to the healthcare unit. Again, the healthcare officers had plaintiff transferred out of the healthcare unit. Following this transfer out of the healthcare unit, plaintiff was placed in a third-floor cell, which required him to climb up and down stairs several times a day. Also, plaintiff was forced to partake in yard activities and gym lines. All this movement and activity caused plaintiff extreme pain and discomfort as he had a difficult time walking, moving around, and climbing stairs. Approximately one week later, plaintiff was re-assigned to a second-floor cell.

Plaintiff has brought a two-count complaint against the defendants. Count I is a § 1983 claim brought against only the individual Chicago police officers and, therefore, is not relevant to the current motion to dismiss. Count II is a § 1983 claim brought against the county defendants, alleging that the individual county defendants violated plaintiff's constitutional rights

3

by denying him medical attention. Specifically, Count II alleges that, because of the injury to his right leg, plaintiff required medical attention which he was denied by the county defendants when they (1) transferred him out of the healthcare unit and (2) ignored and/or mocked plaintiff when he requested medical care. As a result of defendants' conduct, plaintiff suffered extreme pain in his leg. Further, plaintiff alleges that defendants knew or should have known that their conduct violated plaintiff's Fourth and Fourteenth Amendment rights.

The county defendants now move to dismiss plaintiffs' third amended complaint.[1] In their motion, the county defendants argue that plaintiff's third amended complaint should be dismissed because plaintiff has failed to allege that the county defendants deprived him of a constitutional right. Specifically, the county defendants contend that (1) plaintiff has not alleged a "serious" medical condition; (2) plaintiff has not alleged a culpable state of mind for any county defendants; and (3) plaintiff has not alleged an official capacity claim.

## II. DISCUSSION

### A.  Standard for Deciding a Motion to Dismiss Under Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint; it does not challenge the merits of the claims. *Gibson v. Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Under the notice pleading standard set forth in the federal rules, a plaintiff must set forth a short and plain statement of the claim that adequately provides

---

[1] It appears in their motion to dismiss that defendants seek to dismiss plaintiff's complaint in its entirety. However, only Count II of the complaint seeks relief against the county defendants. Count I seeks relief against the city officers and has already been answered. Thus, the court may consider dismissing the county defendants from this suit, but regardless, the complaint will remain as to the city officers.

4

defendants notice of that claim and the relief sought. FED. R. CIV. P. 8; *see also Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir. 1999). However, while the Federal Rules of Civil Procedure provide a liberal notice pleading standard, the complaint must include either direct or inferential allegations with respect to all material elements of the claims asserted. *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991).

In addressing the defendants' motion to dismiss pursuant to Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of plaintiff. *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987). The court may dismiss a claim only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

### B.  Section 1983 Claim – Denial of Medical Care

To properly state a claim under § 1983, plaintiff must allege facts sufficient to show that the defendants deprived him of a right or an interest secured by the Constitution or laws of the United States and that the defendants were acting under color of state law. *Payne v. Churchich*, 161 F.3d 1030, 1039 (7th Cir. 1998). In this case, the county defendants were all correction officers employed by Cook County and working at CCDOC at the time of plaintiff's incarceration. It is clear that they were state actors. *See id.* The crucial inquiry, therefore, is whether these defendants deprived plaintiff of a right secured by the Constitution.

As a threshold matter, plaintiff is claiming that he was deprived of his right to medical attention when he was a pretrial detainee. According to case law, such an allegation is treated

5

as a claim under the Due Process Clause of the Fourteenth Amendment.² *Id.* In their motion to dismiss, the county defendants claim that plaintiff has failed to state a claim against the county defendants in either their individual or their official capacities.

1. **Individual Capacity**

Individuals are liable under § 1983 if they caused or participated in the alleged constitutional deprivation. *Flowers v. Velasco*, No. 00 C 1708, 2000 WL 1644362, at *4 (N.D. Ill. Oct. 19, 2000) (citing *Vance v. Washington*, 97 F.3d 987, 991 (7th Cir. 1996)). The Seventh Circuit has applied the "deliberate indifference" standard to a pretrial detainee's § 1983 claim. *Payne*, 161 F.3d at 1041 (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir. 1996)). Under this standard, a prison official violates the Fourteenth Amendment when he is deliberately indifferent to a substantial risk of serious harm to the inmate. *Payne*, 161 F.3d at 1041. A plaintiff establishes a § 1983 claim by "demonstrating that the defendants were aware of a substantial risk of serious injury to the detainee but nevertheless failed to take appropriate steps to protect him from a known danger." *Id.*

In order to determine deliberate indifference, the court must examine a two-part test: (1) an objective component which examines whether the medical condition was serious, and (2) a subjective component which examines whether the defendants were deliberately indifferent to that serious medical need. *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000). Thus, to state

---

²While in custody, the treatment of a pretrial detainee is governed by the Due Process Clause of the Fourteenth Amendment. *Payne*, 161 F.3d at 1040. The protection afforded a pretrial detainee is "at least as great as the protection a convicted prisoner is afforded under the Eighth Amendment." *Id.*

6

a claim against the defendants in their individual capacities, plaintiff must allege that he was suffering from a serious medical condition or need and that the defendants were deliberately indifferent to his needs. *See id.*

### a. Serious medical need or condition

Inattention to medical needs amounts to a constitutional violations only where the condition is serious. *Brownell v. Figel*, 950 F.2d 1285, 1289 (7th Cir. 1991). A medical condition need not be life-threatening to qualify as serious and to support a § 1983 claim, providing that the denial of medical care could result in further significant injury or in the unnecessary infliction of pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997); *Reed v. McBride*, 178 F.3d 849 (7th Cir. 1999); *see also Spencer v. Sheahan*, No. 97 C 4347, 1999 WL 438998, at *3 (N.D. Ill. June 21, 1999) (holding that plaintiff, a diabetic who previously struck his foot and suffered severe pain from the foot injury which led to frostbite and gangrene which, ultimately, led to partial amputation, sufficiently alleged a serious medical need for further treatment of his foot).

Further, the Seventh Circuit has defined a "serious" medical condition:

> A "serious" medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention ... [Factors that indicate a serious medical condition include] the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, *the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.*

*Gutierrez*, 111 F.3d at 1373 (emphasis added) (citations omitted).

Defendants argue that plaintiff had no "serious" medical need. However, plaintiff's allegations are sufficient to withstand a motion to dismiss. Here, plaintiff alleges – and the court must accept as true – that he was shot in the leg and suffered from pain and swelling in his leg. In fact, the injury from the gun shot was so severe it required reconstructive surgery. Further, plaintiff was unable to walk without the assistance of a cane or crutches. Thus, these allegations could establish that plaintiff's injury was obvious even to a lay person. Further, it appears from the complaint that the condition has affected plaintiff's daily activities. Yet plaintiff was denied the use of a cane or crutches for at least several hours, resulting in unnecessary pain and suffering. Being forced to walk without assistance led to severe pain for plaintiff – pain that was unnecessary as crutches could have prevented it. These allegations sufficiently state that plaintiff suffered from a "serious" medical condition. Thus, the next issue the court must address is whether plaintiff has sufficiently alleged that the defendants acted with deliberate indifference.

### b. Deliberate indifference

The Supreme Court has stated that a prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Prison officials are deliberately indifferent when they act "intentionally or in a criminally reckless manner." *Tesch v. County of Green Lake*, 157 F.3d 465, 474 (7th Cir. 1998).

It is not enough for plaintiff to aver a single, conclusory allegation that the defendants' conduct was "deliberately indifferent" of plaintiff's constitutional rights. *Payne*, 161 F.3d at 1041. On the contrary, a finding of deliberate indifference "requires evidence that the official

was aware of the risk and consciously disregarded it nonetheless." *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997). Plaintiff must allege some conduct on the part of the defendants that rises to the level of deliberate indifference. *See Payne*, 161 F.3d at 1042.

Proof of deliberate indifference may be found where a prison official "'intentionally denies or delays access to medical care or intentionally interferes with the treatment once prescribed.'" *Spencer v. Sheahan*, No. 97 C 4347, 1999 WL 438998, at *4 (N.D. Ill. June 21, 1999) (quoting *Estelle*, 429 U.S. at 105). Allegations that defendants' actions were "deliberate and intentional and were done with malice towards plaintiff" and that defendants' actions were "done with reckless disregard for the rights of plaintiff" are sufficient statements of "deliberate indifference" for purposes of a Rule 12(b)(6) motion. *Antonelli v. Sheahan*, 81 F.3d 1422, 1429 (7th Cir. 1996). However, allegations of negligence or gross negligence are insufficient to state a claim under § 1983. *Anton v. Sheriff of DuPage County*, 47 F. Supp. 2d 993, 999 (N.D. Ill. 1999) (citing *Canton v. Harris*, 489 U.S. 378, 388-89 (1989)).

Further, allegations that defendants responded in a sarcastic or mocking manner help "'raise a dispute about both the defendants' knowledge of the condition, and there refusal to take steps to prevent it.'" *Anton*, 47 F. Supp. 2d at 1000 (quoting *Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997)). Also, allegations that prison officials ignored an inmate's plea for medical care may be sufficient to withstand a motion to dismiss. *See, e.g., Antonelli v. Sheahan*, 81 F.3d 1422 (7th Cir. 1995).

With respect to the segregation officers, plaintiff claims that he told the county defendants of the serious pain in his leg. Also, plaintiff alleges that he continually asked for treatment for

9

his leg, yet he remained in the segregation unit for several days without receiving medical treatment. Plaintiff further contends that the segregation officers responded by ignoring and/or mocking plaintiff. The allegation that plaintiff's requests for medical attention were met with mocking helps to raise a dispute about the segregation officers' knowledge. These facts, if proven, could establish the segregation officers' deliberate indifference. *See Anton*, 47 F. Supp. 2d at 1000. Accordingly, plaintiff has sufficiently stated a claim under § 1983 against the segregation officers in their individual capacities.

With respect to the healthcare officers, plaintiff alleges that he was transferred to the healthcare unit two times during his incarceration. Both times, the named healthcare officers transferred him out of that unit without medical attention. These allegations – taken as true by the court – sufficiently allege that the healthcare officers intentionally denied plaintiff medical care in violation of § 1983. *See Spencer*, 1999 WL 438998, at *4 (finding that deliberate indifference can be established by a prison official's intentional denial of treatment). Accordingly, plaintiff has sufficiently stated a claim under § 1983 against the healthcare officers in their individual capacities.

In sum, plaintiff's third amended complaint contains allegations sufficient to establish that plaintiff suffered from a serious medical condition and that the county defendants' were deliberately indifferent to his need for medical attention. Taking the allegations in plaintiff's complaint as true, the court cannot say beyond doubt that plaintiff could prove no set of facts that would entitle him to relief. Accordingly, the court denies defendants' motion to dismiss

plaintiff's third amended complaint with respect to claims brought against the county defendants in their individual capacity.[3]

## 2. **Official capacity**

Actions brought against governmental employees in their official capacities are actually claims against the governmental entity for which they work. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). A local government is liable only if plaintiff alleges that the constitutional deprivations occurred as a result of an official policy, custom or practice. *Monell v. Dept. of Social Serv.*, 436 U.S. 658, 694 (1978).

Specifically, to state a § 1983 claim against individuals in their official capacities, plaintiff must allege: (1) a deprivation of a constitutionally protected interest and (2) that the action alleged to be under color of law can be definitely linked to a governmental policy or custom. *Monell*, 436 U.S. at 694. In other words, even if plaintiff's constitutional rights were violated by the deprivation of medical attention which he alleges, he must show that an official custom or policy caused the deprivation. *Wysinger v. Sheahan*, No. 94 C 513, 1995 WL 407381, at *2 (N.D. Ill. July 5, 1995).

In the present case, there is no allegation of any custom, policy or practice with respect to Count II brought against the county defendants. Accordingly, the complaint is dismissed as to all county defendants insofar as they are sued in their official capacities.

---

[3]The court would, however, consider a properly supported motion for summary judgment on this issue. Such a motion – addressing the severity of plaintiff's injuries and defendants' response to plaintiff's request for treatment – with the pertinent medical records, affidavits, or testimonial evidence would assist the court in determining whether a constitutional violation occurred.

11

## C. Defendants' Remaining Arguments

In their motion to dismiss, the county defendants also argue that plaintiff has failed to allege a constitutional violation with respect to his placement in the CCDOC. In response, plaintiff contends that his claim that he was transferred in and out of CCDOC's healthcare unit relates to his claim that he was denied medical treatment. After examining the third amended complaint, it is not clear to this court that plaintiff is alleging a separate claim for a violation of his constitutional rights. However, to be clear, plaintiff's allegations regarding his transfers into and out of the healthcare unit go towards establishing the deliberate indifference of the officers. Such allegations are not sufficient to state a separate claim for violation of § 1983 solely based on the denial of medical care. Thus, defendants' claim of qualified immunity – based on plaintiff's placement in CCDOC – is inapplicable.

Finally, in their motion to dismiss, defendants argue that plaintiff has not presented any specific facts which show each individual defendant's intent. However, plaintiff does not need to offer evidence in support of his claims, nor does he even need to plead facts under the liberal system of notice pleading – whether he can ultimately offer evidence in support of his claims is appropriately decided on a summary judgment motion, not on a motion to dismiss. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993).

## III. CONCLUSION

For the foregoing reasons the court denies in part and grants in part county defendants' motion to dismiss. All official capacity claims brought against the county defendants are dismissed. All remaining claims against the county defendants stand.

Date: FEB 12 2001

James H. Alesia
United States District Judge